E-FILED
Thursday, 31 December, 2009  11:51:50 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF ILLINOIS

Trenika Cross                )
                             )  No. 09-2324
        Plaintiff,           )
                             )  Judge:
V.                           )
                             )  Pro Se:
Decatur Police Officers      )
                             )
        Defendants,          )
                             )
                             )

FILED
DEC 31 2009
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

## COMPLAINT

COMES NOW the Plaintiff, Trenika Cross, appearing Pro Se, and complaining against the defendants, Decatur Police Officers, states, alleges, avers as follows:

### Introduction

1. This action is brought pursuant to redress the deprivation of rights, excessive force and brutality under the law of Plaintiff's rights as secured by the United States Constitution.

### Jurisdiction and Venue

2. This court has Jurisdiction of the action pursuant to and under Principles of Pendent subject matter.

3. Venue is proper. All parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within said district.

4. On January 5th 2008, and at all relevant times, Plaintiff, Trenika Cross, was a resident of the City of Decatur, County of Macon and State of Illinois, and resided at 1270 N. College in said city.

5. On January 5th 2008, the Decatur Police Officers was a municipal corporation organized under the laws of the State of Illinois.

6. On January 5th 2008, and at all relevant times, Defendant officers were employed by the Decatur Police Department.

## Background

7. On January 5th 2008 at approximately 6 p.m., Plaintiff, Trenika Cross, was driving West on Wood Street, when an officer pulled her over for a said suspended license, that she was not aware of. Plaintiff was told to get out of the car and put hands behind her back or she would be maced. Plaintiff put hands behind her back and was handcuffed. Plaintiff was then placed in back of the police van after being searched.

8. At the time and place aforesaid, on said date, Officer Chad Ramsey, in plain clothes approached Plaintiff and opened van door and advised Plaintiff to tell him where she was supposed to have gotten some alleged drugs. Plaintiff informed Officer she had no knowledge of what he was talking about. He informed Plaintiff that he knew she had some drugs on her and showed her a phone with former brother-in-law phone number on it. The Officer said this was her last time to make a deal, otherwise she was going downtown.

9. On January 5th 2008 at said time, Plaintiff was transported to the County jail. Plaintiff was again searched finding nothing. Officer Sweeney and a female Officer were told to book Plaintiff and take her to shower and at that time the drugs would be found.

10. There was an Officer name Jackie who was taking her to the shower when several Officers came and told Officer Sweeney that they couldn't keep her on a misdemeanor. They were informed they were to give her a bail or let her go on a (NTA) Notice To Appear and to uncuff Plaintiff.

11. Officer Sweeney took Plaintiff into another part of the jail and threw belongings into the hallway. He said he would fill out paperwork and Plaintiff would be let go.

12. Further, Officer Chad Ramsey returned again questioning Plaintiff about drugs, attempting to coerce Plaintiff to confess to selling drugs, a crime that she did not commit. Plaintiff informed Officer once again that she didn't have any drugs. Officer Chad Ramsey was on phone again and told former brother-in-law "Deals Off" and then hung up phone.

13. Officer Chad Ramsey informed Plaintiff that if she didn't cooperate he was going to get a Judge to sign a cavity search warrant and take Plaintiff to the hospital. Plaintiff asked to make a phone call. Officer said that's only in the movies and you are not required a phone call.

14. Officer Ramsey walked out of the room and came back with a Female Officer and they told Plaintiff to put her hands behind her back. Plaintiff questioned them because she was supposed to be released. Plaintiff was informed to put her hand behind her back or she would be maced. At this time the room was then filled with Officer Ramsey, Seals, McElroy as well as several plain clothes officers.

15. The female officer grabbed the Plaintiff hair and begins pulling her hair, calling her fat bitches, saying she's too fat. She tried to get to the door yelling help. The officers grabbed Plaintiff and begin to hit her and kick her several times as well as still pulling her hair, causing her to urinate on herself. While trying to still get to the door yelling help, Plaintiff was mace and handcuffs put back on. She went down to the floor. Officer Seals jumped over the table because of how strong the mace was. They hit a lock on the door to make sure she couldn't open the door. She was yelling and screaming that I couldn't breathe. She had been maced, beat, and kicked causing her to urinate on herself, he felt like she was dying.

16. Plaintiff is a diabetic and informed Officers several times she needed her medication, which is where Plaintiff was on her way when she was pulled over originally. She was informed by Officers its not like she was going to die and she would be alright.

17. Officer Ramsey came in again and said a Judge was coming to sign a warrant and that it would be in Plaintiff best interest to give him the drugs. Once again because the accusation was false, Plaintiff refused to confess, so he left out.

18. After several minutes went by Plaintiff knocked on the door with her head and an officer open the door. Plaintiff informed Officer she needed her medication and needed to go to the bathroom. She tried to get stick her head out of the door. Once again her hair was pulled and she was pushed back. She asked the officers to loosen the handcuffs. They said no, because she would try to swallow the drugs that she was suppose to have on her. She asked for her medication again and was told her sister was gone to get it.

19. The Plaintiff put her face against mirror and could see when the Judge came. Plaintiff asked if she could speak to him. She yelled through the door telling the Judge to please open the door and look at her face and see what they were doing to her. Officer McElroy opened the door and told her to be quiet. She kept yelling and the door was opened again and she was told to shut up or she would be sprayed again. And that the first dose of mace wasn't that bad.

20. Several minutes later Plaintiff was told to come on, she was going to the hospital for a cavity search. She told them she needed her socks and shoes because she was a diabetic. Then Officer told her she was going to be alright. They walked her through the hallway barefoot. She asked to see warrant and one Officer began to show it to her but Officer Ramsey said she didn't need to see it. She would see it when she come back and is charged with a felony.

21. It was raining and the Officer took Plaintiff outside without shoes or socks or a coat on, even though they took her coat with her.

22. Decatur Police Officers all escorted Plaintiff into St Mary's hospital. Officers asked the nurses where to go. Officers were told room D, where they took

Plaintiff into the room. There were two female Officers and Officer Ramsey in the room. Once again Officer Ramsey tried to coerce Plaintiff to admit she had drugs and told Plaintiff this was her last time to take the drugs out herself. The Officers told the nurses that they didn't have to register Plaintiff. The nurse said she was going to check with someone. Plaintiff felt violated. They were getting ready to take off her clothes in front of these Officers and show her private parts. Plaintiff had already urinated on herself from being beat and not being allowed to go to the bathroom. Officer Ramsey asked if she would take the drugs out he would step out of the room. She shocked her head to get him to step out of the room. The female officer said she would uncuff her if she was going to do it. Plaintiff informed her once again she didn't have any drugs. She stepped in the hallway and borrowed another officer taser. She said she hadn't cooperated all night and she knew she would have to use it. The nurse name I believe Kelly said she had restraint to tie her down. Plaintiff was placed on the bed face down with tight handcuffs on with hands behind her back, with both legs restrained to the bed. An Officer stood next to the bed with a taser next to her face with intent to taser Plaintiff if she moved. Prior to this Dr Rayes asked if they needed him, they told him no, they could handle it, so he left.

23. The Nurse and Officer proceeded with the procedure. They began to put their whole hand in Plaintiff buttock and in her vagina. They told the Officer there wasn't anything there. The Officer told them to check again, check good. They did and told him there wasn't anything there.

24. Plaintiff asked the Officer if she could use the bathroom. Plaintiff was searched again and finally let go to the bathroom. She was now bleeding from the procedure, wet from urinating earlier and her face burning and still needing to be washed from being maced earlier.

25. At this point Officer Seals may have felt bad about all that had happened and allowed her to be handcuffed in front this time.

26. Decatur Police Officers then walked the Plaintiff back outside to the van barefooted. The Officers took Plaintiff back to the station where Officer Ramsey came in and said he needed to check one more spot. He checked through all her hair and asked how it was done. Officer Ramsey finally took off Plaintiff handcuffs. Plaintiff wrists were bruised and numb. He and the other Officer left and Officer Sweeney came in and told her how "she really fucked up their night." Officer Seals said that she fucked up her night also and she was supposed to be off. Plaintiff informed them that her night was worse than theirs. Officers Sweeney informed Plaintiff that they work for a living. She informed them that she does daycare and her husband had a job.

27. Plaintiff asked for her shoes, phone and search warrant. Plaintiff was told her shoes were still on top of her car and her phone and search warrant was with her belongings, all which was a not true. Her car was impounded, phone and search warrant wasn't with belongings. Officer Sweeney told her if she didn't be quiet he would stop filling out her NTA (Notice to Appear) papers and put her in jail. Plaintiff was informed

later that Officer Chad Ramsey had taken her phone home with him. She left and went outside where her family was waiting because they had been continually told that Plaintiff was not there.

28. Plaintiff face was swollen, red and she was limping, suffering injuries to right knee, numbness to wrist and soreness all over. Plaintiff was taken to Decatur Memorial Hospital by family and was seen by an Emergency room doctor. Several tests were done and follow-up by her family M.D. Plaintiff also spoke with Sgt. Bradley while in the Emergency room and a report was made.

29. Plaintiff never had her rights read to her, picture taken nor was she fingerprinted. Plaintiff felt legally beaten and raped.

### Count I- Excessive Force - Assault and Battery

30. Thereafter, Defendants were acting as the duly authorized agents of the city of Decatur, and were then there acting within the scope of there employment with said principle.

31. The Defendants actions were undertaken intentionally with willful indifference of Plaintiff's constitutional rights.

32. The misconduct described in this court was undertaken pursuant to the policy and practice of the city of Decatur by its officers.

33. The Defendant misconduct described in this court was undertaken with malice, willfulness, and reckless indifference to the rights of the plaintiff.

34. As described more fully, above, the force used by one or more of the Defendant officers against Plaintiff was unreasonable, wholly unnecessary and absolutely unjustified.

35. That as a direct and proximate cause of the arrest with excessive force by the Defendants, Plaintiff sustained injuries of a personal, pecuniary, and permanent nature, and was injured, both physically and mentally. Plaintiff has suffered and in the future will suffer great physical and emotional pain and discomfort, and physical and emotional impairment and disability.

36. In addition, Plaintiff has, suffered humiliation and emotional distress as a result of being arrested with excessive force.

WHEREFORE, the Plaintiff, Trenika Cross, pray that the Court enter judgment in her favor and against Defendants and that the Court award Plaintiff compensatory damage and such additional or alternative relief as may be just, proper, and equitable, including cost as this Honorable Court deems just.

RESPECTFULLY SUMITTED,

Trenika Cross
1270 N. College Street
Decatur, Il 62522
PRO SE

Dated:
12-31-09

*Trenika Cross*